**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **PHARMERICA LONG-TERM CARE, INC., a Delaware corporation,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:09cv600** |
| **INFINIA HEALTHCARE COMPANIES, LLC, a Utah limited liability company, et al.,** | **District Judge Ted Stewart** |
| **Defendants.** | **Magistrate Judge Paul M. Warner** |

This matter was referred to Magistrate Judge Paul M. Warner by District Judge Ted Stewart pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court are (1) PharMerica Long-Term Care, Inc.'s ("PharMerica") motion to compel Defendant 24-7 Long Term Care, Inc. ("24-7") to respond to its first set of discovery requests;[2] (2) PharMerica's motion to compel Defendant Clinton W. Robertson ("Clinton") to respond to its first set of discovery requests;[3] (3) PharMerica's motion to amend the scheduling order;[4] (4) Clinton and 24-7 et al.'s[5] motion to

---

[1] *See* docket no. 27.

[2] *See* docket no. 69.

[3] *See* docket no. 70.

[4] *See* docket no. 72.

[5] Additional Defendants joined in this motion are the following: Tall Pines Care and Rehab, Inc.; Ponderosa Pines Care and Rehab, Inc.; Red Rock Care and Rehab, Inc.; Lomond

quash a subpoena served upon counsel,[6] or, in the alternative, motion for a protective order;[7] and

(5) PharMerica's motion for leave to file a surreply in opposition to the motion to quash.[8]  The

court has carefully reviewed the motions and memoranda submitted by the parties.  Pursuant to

civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the

court elects to determine the motions on the basis of the written memoranda and finds that oral

argument would not be helpful or necessary.  *See* DUCivR 7-1(f).

As an initial matter, the court notes that in its discovery requests, PharMerica defined

Defendant "Infinia" as Infinia Healthcare Companies, LLC; Infinia, Inc.; Infinia at Owatonna,

Inc. d/b/a Infinia at Owatonna; Infinia at Faribault, Inc. d/b/a Infinia at Faribault; and Infinia at

Willmar, Inc. d/b/a Infinia at Willmar; along with the following additional Defendants:  Tall

Pines Care and Rehab, Inc.; Ponderosa Pines Care and Rehab, Inc.; Red Rock Care and Rehab,

Inc.; Lomond Peak Care and Rehab, Inc.; La Solana Care and Rehab, Inc.; Verde Vista Care and

Rehab, Inc.; Sunset Hills Care and Rehab, Inc.; and Sugar House Care and Rehab, Inc.  In the

discovery requests directed to 24-7, PharMerica defined  "you" or "your" as 24-7 and "its

subsidiaries, parent and affiliates, corporate predecessors and successors, past or present agents,

employees, officers, or directors, and all other persons acting on its behalf"; and the "Other

---

Peak Care and Rehab, Inc.; La Solana Care and Rehab, Inc.; Verde Vista Care and Rehab, Inc.;
Sunset Hills Care and Rehab, Inc.; and Sugar House Care and Rehab, Inc.

[6] *See* docket no. 77.

[7] *See* docket no. 79.

[8] *See* docket no. 89.

Defendants" as Infinia and Clinton.[9]  In the discovery requests directed to Clinton, PharMerica

defined "you" and "your" as Clinton and "his heirs, assigns, predecessors, successors, past or

present agents, employees, representatives and all other persons acting on [his] behalf"; and the

"Other Defendants" as Infinia and 24-7.[10]  This is confusing.  Therefore, for purposes of this

memorandum decision and order, the court will delineate the various parties in the following

manner.  First, Infinia Healthcare Companies, LLC; Infinia, Inc.; Infinia at Owatonna; Infinia at

Faribault; and Infinia at Willmar will be referred to collectively as the "Infinia Defendants,"

while Infinia Heathcare Companies, LLC will be referred to individually as "Infinia."  Second,

24-7; Tall Pines Care and Rehab, Inc.; Ponderosa Pines Care and Rehab, Inc.; Red Rock Care

and Rehab, Inc.; Lomond Peak Care and Rehab, Inc.; La Solana Care and Rehab, Inc.; Verde

Vista Care and Rehab, Inc.; Sunset Hills Care and Rehab, Inc.; and Sugar House Care and

Rehab, Inc. will be referred to collectively as the "24-7 Defendants."  Third, Scott Robertson

will be referred to as "Scott" and R. David Grant will be referred to as "Grant."  And, finally,

Clinton, 24-7, and PharMerica will be referred to individually as set forth above.

## BACKGROUND

PharMerica provides pharmacy-related goods and services to residents of long-term care

and nursing home facilities.  PharMerica provides these goods and services as an "under

arrangements provider" pursuant to 42 C.F.R. § 409.3 and 42 U.S.C. § 1395x(w)(1).  An under

arrangements provider does not bill Medicare directly, but provides goods or services to a skilled

---

[9] Docket no. 69, Exhibit B at 2-3.

[10] Docket no. 70, Exhibit A at 2-3.

nursing facility ("SNF"), and the SNF bills Medicare through its Medicare provider number based on an acuity level assigned to each patient. Thus, PharMerica relies on the SNF for payment from Medicare for its goods and services provided to the SNF's Medicare Part A residents.

PharMerica contracted with Infinia to provide pharmacy goods and services to three SNFs in Minnesota. There were three separate Pharmacy Services Agreements, each between PharMerica and Infinia, all signed by Clinton in his capacity as President of Infinia. PharMerica alleges that the Infinia Defendants failed to pay for a significant portion of goods and services PharMerica provided to the SNFs in Minnesota. However, PharMerica contends, the Infinia Defendants billed Medicare and received payment for those goods and services.

PharMerica contends that in October 2008, the SNFs in Minnesota were sold or transferred to the 24-7 Defendants with Clinton as the director, manager, officer, or registered agent of at least some of the 24-7 Defendants. PharMerica asserts that the sale of the SNFs in Minnesota left the Infinia Defendants insolvent and unable to pay their creditors. PharMerica alleges that Clinton and the Infinia Defendants, as well as Scott and Grant, entered into a scheme to defraud the Infinia Defendants' creditors, like PharMerica, by transferring the Infinia Defendants' remaining assets to the 24-7 Defendants and structuring the transfer of assets for the explicit purpose of avoiding their creditors' claims.

The 24-7 Defendants view this case as nothing more than a collection action on the part of PharMerica to recover an unsecured debt from the Infinia Defendants, entities that are insolvent and not represented in this action.

## DISCUSSION

### A. PharMerica's Motion to Compel (24-7)

PharMerica asserts that 24-7's original responses to PharMerica's first set of written discovery were incomplete and untimely. The court will address each of the specific interrogatories and requests for production of documents.

### (1) Interrogatory Nos. 4, 10, 12, 16, 20, and 21

In Interrogatory Nos. 4, 10, 12, 16, 20, and 21, PharMerica requested information regarding 24-7's acquisition of the Infinia Defendants, including certain payments made to the Infinia Defendants and Clinton. In response to those interrogatories, 24-7 produced a purchase agreement but failed to provide all of the exhibits and/or schedules that should have been attached; 24-7 produced only the cover sheets for those exhibits and/or schedules. 24-7 asserts that it has produced all of the transaction documents between it and the Infinia Defendants and that the exhibits and schedules referenced were either never created or cannot be found.

The court concludes that PharMerica is entitled to discover the documents requested in the above-mentioned interrogatories. That said, the court cannot order 24-7 to produce documents it does not have custody or control over or that do not exist. Accordingly, this portion of PharMerica's motion is **GRANTED**. To the extent that 24-7 has not produced all of the documents requested in these interrogatories, it shall do so within thirty (30) days of the date of this order. If all relevant documents have been produced, 24-7 shall provide an affidavit to that effect and will be barred from relying on or using any document that was not produced.

## (2)  Interrogatory No. 23

Interrogatory No. 23 requests the identity of the attorneys and/or consultants representing the buyers and sellers in the purchase of the Infinia Defendants and their related assets.  24-7 objected to this interrogatory on the grounds that it seeks information protected by the attorney-client or work-product privileges.  It did, however, state that "[w]ithout waiving its objections, 24-7 states that Defendant David Grant is an attorney."[11]

In its memorandum in opposition to the instant motion, 24-7 characterizes its response to this interrogatory in the following manner:

> 24-7 did in fact respond to this interrogatory by identifying David Grant as the primary attorney involved in the transaction.  In fact, Pharmerica's First Amended Complaint added David Grant as a party to this dispute.  David Grant held the position as general counsel for Infinia, Inc. and only represented Infinia, Inc. in the transaction.  24-7 was not represented by counsel in the transaction.[12]

24-7 was not totally forthcoming in its response to this interrogatory in its memorandum by representing to the court that it did respond in full.  However, the court notes that 24-7 did not identify Grant as the Infinia Defendants' attorney in response to this interrogatory or inform PharMerica that 24-7 did not have counsel present.  Accordingly, the court **GRANTS** this portion of PharMerica's motion.  Within thirty (30) days of the date of this order, 24-7 shall fully respond to Interrogatory No. 23 and identify all attorneys and/or other consultants involved in the transaction regarding the purchase and/or transfer of assets between the Infinia Defendants and the 24-7 Defendants.

---

[11] Docket no. 69, Exhibit C at 14.

[12] Docket no. 80 at 5.

### (3)  Request for Production Nos. 5 and 6

In Request for Production Nos. 5 and 6, PharMerica seeks all correspondence between 24-7 and the Infinia Defendants, 24-7 and the other 24-7 Defendants, and 24-7 and Clinton from January 1, 2006, to the present.  24-7 asserts that these discovery requests are overly broad and unduly burdensome.  In response to these requests, 24-7 also stated that it would produce the documents in its possession and/or control that were related to the transaction between 24-7 and the Infinia Defendants.  24-7 now asserts that it does not possess any such correspondence because Clinton does not keep copies of email correspondence.

The court concludes that these requests are overly broad on their face.  While these requests are limited by time, they seek *all correspondence* for a four-year period and do not contain appropriate subject-matter limitations.  That said, there is likely some relevant and discoverable correspondence between 24-7 and the above-mentioned parties.  Thus, this portion of PharMerica's motion is **GRANTED IN PART AND DENIED IN PART**.  Whether Clinton personally does or does not keep copies of email correspondence is of no moment to the court.  24-7 likely has computer systems with some type of backup.  Thus, within thirty (30) days of the date of this order, 24-7 and the other 24-7 Defendants shall conduct searches of their computers, servers, and/or backup systems for documents responsive to PharMerica's requests.  24-7 shall produce documents responsive to these requests but limited to the underlying transaction between the above-mentioned parties.  The court strongly urges the parties to stipulate to appropriate search terms.

### (4)  Request for Production No. 10

In Request for Production No. 10, PharMerica seeks all correspondence between 24-7 and the "residents, including family members, of the eight long-term care facilities [24-7] acquired from Infinia, Inc."[13]  24-7 originally objected to the production of this information on the grounds that it was protected by federal privacy regulations.  But, as PharMerica asserts, this information is protected under the Protective Order entered into by the parties.[14]  Despite the Protective Order, PharMerica contends, 24-7 has yet to produce the documents it seeks and has only produced the news release issued to the public.

The news release states that "[r]esidents, family members, employees, associates[,] and community members were visited last week from representatives from 24-7 . . . informing them that the Infinia locations had been sold and that services and employment would continue with higher expectations and with a continued dedication to high quality long-term care."[15]  In its memorandum in opposition to the instant motion, 24-7 asserts that the "news release . . . was the only correspondence sent by 24-7 to resident's [sic] family members regarding the transfer of operations."[16]  However, based on the language of the news release itself, it appears that there was some communication or correspondence between 24-7 and the residents or their families prior to the publishing of the news release.

---

[13] Docket no. 69 at 18.

[14] *See* docket no. 53.

[15] Docket no. 69, Exhibit B at 17-18.

[16] Docket no. 80 at 6.

Accordingly, the court **GRANTS** this portion of PharMerica's motion. Within thirty (30) days of the date of this order, 24-7 shall produce documents responsive to this request. If there are no documents responsive to this request, 24-7 shall provide an affidavit to that effect and will be barred from relying on or using any document that was not produced. Should the affidavit be necessary, 24-7 shall also explain why there is no documentation or correspondence regarding the visit between 24-7 representatives and the residents and/or their families the week before the news release was issued.

### (5)  Request for Production No. 11

In Request for Production No. 11, PharMerica seeks all correspondence between 24-7 and the employees and associates of the Infinia Defendants from January 1, 2006, to the present. In response, 24-7 objects to this request on the grounds of relevancy. The court concludes that this request is overly broad and would likely result in the production of documents that are not relevant to the lawsuit. That said, there may be some relevant correspondence between the above-mentioned parties. Thus, this portion of PharMerica's motion is **GRANTED IN PART AND DENIED IN PART**. Accordingly, within thirty (30) days of the date of this order, 24-7 shall conduct searches of its computers, servers, and/or backup systems for documents responsive to PharMerica's request but limited to the underlying transaction between the above-mentioned parties. Again, the court urges the parties to stipulate to appropriate search terms.

### (6)  Request for Production No. 12

In Request for Production No. 12, PharMerica seeks all correspondence between 24-7 and various government entities regarding 24-7's acquisition of the Infinia Defendants. The

request specifically seeks "all correspondence between you and community members, state governments, the federal government, local governments, agencies and other entities regarding or relating to your acquisition of the eight long-term care facilities you acquired from Infinia, Inc."[17]

24-7 did not object to this request and asserts that it has produced all written communication with "State officials" regarding the transaction at issue.[18] Because 24-7 did not indicate whether it produced written communication with "community members, . . . the federal government, local governments, agencies[,] and other entities" or whether such communication exists, the court **GRANTS** this portion of PharMerica's motion. As such, within thirty (30) days of the date of this order, 24-7 shall produced all documents responsive to this request. If no such documents exist, 24-7 shall provide an affidavit to that effect and will be barred from relying on or using any documents that were not produced.

### (7) Request for Production No. 13

In Request for Production No. 13, PharMerica seeks 24-7's tax returns from 2006 to the present. 24-7 responds by stating that it has not yet filed its 2009 tax return but will produce it once it has been filed. 24-7 does not indicate whether it filed tax returns for 2006, 2007, or 2008, and it has not provided a basis for withholding them from production. Accordingly, this portion of PharMerica's motion is **GRANTED**. Within thirty (30) days of the date of this order, 24-7 shall provide its tax returns for 2006, 2007, and 2008, if they exist. Presuming 24-7 is

---

[17] Docket no. 69, Exhibit B at 12.

[18] Docket no. 80 at 6.

acting with good faith, 24-7 shall provide its 2009 tax return after it has been filed. All said

returns will be subject to the Protective Order entered in this case to avoid public disclosure

barring an additional court order. If it becomes apparent that 24-7 has not filed its 2009 taxes in

order to avoid discovery, PharMerica may renew its motion in the future.

### (8) Request for Production No. 14

In Request for Production No. 14, PharMerica seeks "all documents reflecting or relating

to payments [24-7] made to any of the Other Defendants since January 1, 2006."[19] While

PharMerica states that 24-7 produced some documents showing regular salary payments to

Clinton, PharMerica asserts that 24-7 admits in its response to Interrogatory No. 16 that "there

were 'other payments' in addition to the transaction documents promissory notes, and payments

made to [Clinton] as salary, but they have not been produced."[20] However, in its response to

Interrogatory No. 16, 24-7 stated that it "made payments in the form of its assumption of certain

liabilities of the Infinia" Defendants, "as set forth in the transaction documents."[21] In its

memorandum in opposition to the instant motion, 24-7 further asserts that it did produce

documents regarding payments made to the Infinia Defendants by 24-7 relating to the transaction

at issue in this case but that the payments made by 24-7 were made to the secured creditors

because the promissory notes were assigned by the Infinia Defendants to their secured creditors.

---

[19] Docket no. 69, Exhibit B at 13. The court also notes, as stated above, PharMerica defined the "Other Defendants" as including some 24-7 Defendants, all of the Infinia Defendants, and Clinton.

[20] *Id.* at 6.

[21] *Id.*, Exhibit C at 10.

24-7 asserts that there were no payments made to any named defendant in conjunction with the transaction at issue in this case.

The court concludes that this information is relevant to PharMerica's claims against 24-7. As such, the court **GRANTS** this portion of PharMerica's motion. Thus, to the extent it has not done so already, 24-7 is ordered to produce any documents responsive to this request, including "account activity, wire transfer documentation, or cleared checks."[22] If there are no documents responsive to this request, 24-7 shall provide an affidavit to that effect and will be barred from relying on or using any document that was not produced.

### (9)  Request for Production No. 16.

In Request for Production No. 16, PharMerica seeks "all contracts and agreements between [24-7] and any third-party relating to the long-term care facilities or assets you purchased from the Other Defendants."[23] 24-7 objects on the grounds of relevance. PharMerica contends that the documents are relevant because "the production of them will evidence what relationships 24-7 has or had with other defendants to this action" and these agreements may show that the Infinia Defendant's assets were "being moved to 24-7 or related entities in an indirect manner other than through the Purchase Agreement."[24]

The court concludes that 24-7's objection on the grounds of relevance is ill-founded. The general scope of discovery is governed by rule 26(b)(1) of the Federal Rules of Civil Procedure,

---

[22] *Id.* at 6.

[23] *Id.*, Exhibit B at 13.

[24] *Id.* at 6.

which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Thus, the standard for relevance is somewhat low during discovery, and it is not the same standard for admissibility at trial. It is possible that some of the agreements or contracts sought may be relevant to the claims at issue. That said, it appears to the court that this request may be overly broad and/or vague in that there could be two contracts or there could be 200 contracts. Because it is not clear to the court how many and what type of contracts are at issue in this request, the court will **DENY** this portion of PharMerica's motion at this time. PharMerica may serve a more narrowly tailored request on 24-7 regarding third-party contracts and, if it becomes necessary, renew its motion to compel.

### (10)  Request for Production Nos. 18, 19, and 20

In Request for Production Nos. 18, 19, and 20, PharMerica seeks financial information, including aged accounts payable, accounts receivable, and bank statements since January 1, 2006. 24-7 asserts that it has produced documents setting forth the 24-7 Defendants' financial information as of January 2010. In response, PharMerica contends that 24-7 provided only "a bare bones balance sheet and income statement dated almost a year after the transaction."[25]  24-7 also argues that PharMerica, as the requesting party, should acquire 24-7's bank statements from Wells Fargo, rather than from 24-7. 24-7 states that PharMerica has issued a subpoena to Wells Fargo but that it did not know whether the bank statements had been produced.

---

[25] Docket no. 84 at 4.

The court concludes that the information sought is relevant to PharMerica's claims against the 24-7 Defendants. 24-7 has not demonstrated that it has fully responded to such requests or that PharMerica is not entitled to this discovery. As such, this portion of PharMerica's motion is **GRANTED**. Within thirty (30) days of the date of this order, 24-7 shall provide documents responsive to these requests. However, if Wells Fargo has already produced the bank statements to Pharmerica, 24-7 is not required to duplicate that production.

### (11) Request for Production No. 21

In Request for Production No. 21, PharMerica seeks "all deeds, leases[,] and titles relating to real property and assets you purchased, leased[,] or assumed from the Other Defendants."[26] 24-7 asserts that it "produced the lease agreements relating to each of the facilities formerly operated by Infinia and now operated by 24-7 and its subsidiaries that are in its possession and/or control."[27] In its reply memorandum, PharMerica does not address this assertion. That notwithstanding, the court concludes that the information sought is relevant to PharMerica's claims against the 24-7 Defendants. Therefore, this portion of PharMerica's motion is **GRANTED.** To the extent it has not already done so, 24-7 shall produce the documents responsive to this request.

### (12) Request for Production No. 22

In Request for Production No. 22, PharMerica seeks "all employment agreements relating to employees of the Other Defendants or the 'eight long-term care facilities previously owned

---

[26] Docket no. 69, Exhibit B at 14.

[27] Docket no. 80 at 8.

and operated by Infinia, Inc.'. . . who became employed by, or contracted with [24-7] after" the transaction at issue.[28] PharMerica contends that the employment contracts will demonstrate that the 24-7 Defendants are a "mere continuation" of the Infinia Defendants. 24-7 objects on the grounds of relevancy. Again, the court concludes that 24-7's objection on this basis is ill-founded. It is likely that relevant information is contained within the employment contracts relating to PharMerica's claims against the 24-7 Defendants. Accordingly, this portion of PharMerica's motion is **GRANTED.** Within thirty (30) days of the date of this order, 24-7 shall provide the employment contracts sought.

## B. PharMerica's Motion to Compel (Clinton)

PharMerica asserts that Clinton's original responses to PharMerica's first set of written discovery were incomplete and untimely. The court will address each of the specific interrogatories and requests for production of documents.

### (1) Interrogatory No. 4

In Interrogatory No. 4, PharMerica seeks the identification of "all payments [Clinton] received from Infinia since January 1, 2006, and state the reason for each payment."[29] Clinton asserts that this information is not relevant. The court does not agree. Information regarding payments to Clinton while the Infinia Defendants were allegedly insolvent is highly relevant to PharMerica's claims against him. Accordingly, this portion of PharMerica's motion is

---

[28] Docket no. 69, Exhibit B at 14.

[29] Docket no. 70, Exhibit A at 5.

15

**GRANTED**. Within thirty (30) days of the date of this order, Clinton shall provide the information requested in this interrogatory.

### (2) **Interrogatory No. 6.**

In Interrogatory No. 6, PharMerica seeks the identification of "the name, address, telephone number of any accountant, accounting firm[,] or other third party consulted, employed, used, retained[,] or relied on by [Clinton] since January 1, 2006."[30] Clinton objected to this interrogatory on the grounds of relevance but did state that "as the manager of Infinia . . . he consulted with Robert Condie, an accountant employed by Infinia . . . and now employed by 24-7."[31] In his memorandum in opposition to this motion, Clinton asserts that he has not consulted with any other accountant or accounting firm. Because it appears that Clinton has now answered this interrogatory in full, the court **DENIES** this portion PharMerica's motion. However, if Clinton did consult with, employ, use, retain, or rely upon any accountant or accounting firm during the relevant time period without disclosing it to PharMerica, Clinton will be barred from relying on or using any document from that accountant or accounting firm.

### (3) **Interrogatory No. 8**

In Interrogatory No. 8, PharMerica seeks information regarding any other lawsuit, bankruptcy, criminal proceeding, arbitration, or mediation to which Clinton has been a party. Clinton objects on grounds that this information is not relevant to PharMerica's case against him. The court disagrees and concludes that this information is relevant for discovery purposes. As

---

[30] Docket no. 70, Exhibit A at 6.

[31] *Id.*, Exhibit B at 6.

such, this portion of PharMerica's motion is **GRANTED.**  Within thirty (30) days of the date of this order, Clinton shall provide the information requested in this interrogatory.

### (4)  Interrogatory No. 9

In Interrogatory No. 9, PharMerica seeks information regarding Clinton's bank or financial institution at which he has maintained an account since January 1, 2006.  Clinton objects on the grounds that this information is not relevant.  Clinton further states that PharMerica already knows that Clinton's personal bank account is with Wells Fargo, and that he will not seek a protective order to prevent Wells Fargo from producing the subpoenaed bank documents.  The court concludes that this answer does not sufficiently respond to PharMerica's interrogatory.  Clinton does not affirmatively state that Wells Fargo is the only bank or financial institution at which he has maintained an account.  Therefore, this portion of PharMerica's motion is **GRANTED**.  Within thirty (30) days of the date of this order, Clinton shall respond to this interrogatory in full.

### (5)  Interrogatory Nos. 16 and 19

PharMerica seeks the identity of individuals present during the negotiations regarding the sale or transfer of assets from the Infinia Defendants to 24-7 and any attorney(s) or other consultants Clinton conferred with regarding the formation of 24-7 and purchase of the Infinia assets.  Clinton objects on the grounds that this information is protected by the attorney-client privilege.  Notwithstanding his objection, Clinton stated that he, Scott, and Grant were present during the negotiations and that he consulted with Grant only.  However, PharMerica has

provided an email to the court that appears to demonstrate that other attorneys may have been present and/or consulted during these negotiations.[32]

The court concludes that the identity of counsel is not protected by the attorney-client privilege. Accordingly, this portion of PharMerica's motion is **GRANTED**. Thus, within thirty (30) days of the date of this order, Clinton shall answer this interrogatory in full.

### (6) Interrogatory No. 18

In Interrogatory No. 18, PharMerica seeks the identification of all communications or correspondence between Clinton and Grant regarding Infinia or 24-7. Clinton objects on the grounds that this interrogatory is overly broad, unduly burdensome, and seeks attorney-client or work-product privileged information. Clinton contends that he and Grant have had hundreds, if not thousands, of conversations and communications and that not all of those conversations and communications would be relevant to the present dispute.

The court concludes that while the substance of some of the communications or correspondence may be protected, that does not permit Clinton to unilaterally object to all information sought. Furthermore, this interrogatory seeks only the identification of said communications or correspondence; it does not seek the substance of those communications. In addition, because PharMerica is alleging that all defendants engaged in fraudulent conduct, communications with counsel in furtherance of that fraud would not necessarily be protected by the attorney-client privilege. *See, e.g.*, *In re Grand Jury Proceedings*, 857 F.2d 710, 712 (10th

---

[32] *See* docket no. 90, Exhibit A ("Subject to final comments from Blake Miller, attached are the proposed purchase agreements in anticipation of our meeting on Wednesday.").

Cir. 1988) ("The attorney-client privilege does not apply where the client consults an attorney to further a crime or fraud."). Accordingly, this portion of PharMerica's motion is **GRANTED**. Within thirty (30) days of the date of this order, Clinton must fully respond to this interrogatory.

### (7) Interrogatory No. 20 and Request for Production No. 13

In Interrogatory No. 20, PharMerica seeks information regarding "each meeting [Clinton] attended while associated with Infinia or 24-7 during which 24-7's purchase of assets from Infinia, or 24-7's plan to purchase assets from Infinia, were discussed."[33] In response to this interrogatory, Clinton stated that while he had several informal meetings with Scott and Grant regarding the sale, he cannot identify each meeting because he does not keep a daily calendar. This, however, is in direct contrast to his response to Request for Production No. 13, which seeks the production of all of Clinton's electronic and manual calendars since January 1, 2006. Clinton objected to this request on the grounds that it is overly broad, unduly burdensome, and seeks documents that are not relevant. Clinton also stated that "it request[s] documents that contain information that is wholly unrelated to this lawsuit and is confidential and private to [Clinton],"[34] thereby admitting to its/their existence.

The court concludes that information regarding Clinton's meetings with regarding the transfer of the Infinia Defendant's assets to 24-7 is relevant to PharMerica's claims against Clinton. And it is likely that Clinton would have that information contained within his calendar(s). Accordingly, the court **GRANTS** this portion of PharMerica's motion. Within

---

[33] Docket no. 70, Exhibit A at 9.

[34] *Id.*, Exhibit B at 20.

thirty (30) days of the date of this order, Clinton shall provide the information sought in the above-mentioned interrogatory and request for production.

## (8)  Request for Production Nos. 1, 2, 3, and 5

In these requests, PharMerica seeks documents regarding 24-7's acquisition of the Infinia Defendants.  In response to these requests, 24-7 and/or Clinton produced a purchase agreement but apparently failed to provide all of the exhibits and/or schedules that should have been attached; 24-7 and/or Clinton produced only the cover sheets for those exhibits and/or schedules. 24-7 and/or Clinton assert that they have produced all of the relevant transaction documents and that the exhibits and schedules referenced were either never created or cannot be found.

The court concludes that PharMerica is entitled to discover the documents requested. That said, the court cannot order Clinton to produce documents that he does not have custody or control over or that do not exist.  Accordingly, this portion of PharMerica's motion is **GRANTED**.  To the extent that Clinton has not produced all of the documents requested, he shall do so within thirty (30) days of the date of this order.  If all relevant documents have been produced, Clinton shall provide an affidavit to that effect and will be barred from relying on or using any document that was not produced.

## (9)  Request for Production No. 4

In this request, PharMerica seeks documents concerning the negotiations associated with the transfer of assets from the Infinia Defendants to 24-7.  Clinton asserts that all relevant documents have been produced.  The court concludes that PharMerica is entitled to discover the documents requested.  Accordingly, this portion of PharMerica's motion is **GRANTED**.  To the

extent that Clinton has not produced all of the documents requested, he shall do so within thirty (30) days of the date of this order. If all relevant documents have been produced, Clinton shall provide an affidavit to that effect and will be barred from relying on or using any document that was not produced.

### (10) Request for Production Nos. 6 and 8

In these requests, PharMerica seeks all correspondence between Clinton and the Infinia Defendants, Clinton and the 24-7 Defendants, and Clinton and Grant. Clinton asserts that this request is overly broad but that he has produced the correspondence related to the transaction at issue.

The court concludes that these requests are overly broad on their face. While the requests are limited by time, they seek *all correspondence* for a four-year period and do not contain appropriate subject-matter limitations. That said, there is likely some relevant and discoverable correspondence between Clinton and the above-mentioned parties. Accordingly, this portion of PharMerica's motion is **GRANTED IN PART AND DENIED IN PART**. To the extent that Clinton has not produced all of the documents requested, limited to the underlying transaction, he shall do so within thirty (30) days of the date of this order. If all relevant documents have been produced, Clinton shall provide an affidavit to that effect and will be barred from relying on or using any document that was not produced.

### (11) Request for Production Nos. 10 and 11

In these requests, PharMerica seeks "statements, speeches, notes, minutes, notices or announcements made, communicating, relating to or establishing [Clinton's] knowledge

regarding 24-7's purchase of assets from Infinia, including documents establishing [Clinton's] knowledge of 24-7's plans to purchase assets from Infinia" and "documents, including but not limited to notes, minutes and/or calendars evidencing [Clinton's] attendance at any meeting, prior to or after The Closing, where 24-7's purchase of assets from Infinia was discussed, contemplated, organized, planned, instituted or executed."[35]  Clinton contends that he did not keep any correspondence, notes, or drafts and, as such, cannot produce said documents.  The court concludes that PharMerica is entitled to this discovery.  Accordingly, this portion of PharMerica's motion is **GRANTED**.  That said, the court cannot order Clinton to produce what he does not have.  Within thirty (30) days of the date of this order, Clinton shall produce documents responsive to this request.  If no such documents exist or have already been produced, Clinton shall provide an affidavit to that effect and will be barred from relying on or using any document that was not produced.

### (12)  Request for Production No. 12

In this request, PharMerica seeks Clinton's tax returns from 2006 to the present.  Clinton objects to this request on the grounds that his personal tax returns are not relevant to this action.  The court does not agree.  As such, this portion of PharMerica's motion is **GRANTED**.  Within thirty (30) days of the date of this order, Clinton shall produce his 2006, 2007, 2008, and 2009 tax returns to PharMerica, subject to the Protective Order entered in this matter.

---

[35] Docket no. 70, Exhibit B at 13.

### (13)  Request for Production No. 14

In this request, PharMerica seeks the production of documents "reflecting or relating to payments [Clinton] received from 24-7 or any of the Other Defendants since January 1, 2006."[36] Clinton asserts that he has produced the requested documents.  In reply, PharMerica contends that Clinton treated this request "as if it is limited to payments to him from Infinia, 24-7 and their respective subsidiaries."[37]  According to PharMerica, this request actually seeks payments to Clinton from "all defendants to the action, their subsidiaries, parents, affiliates, and their corporate predecessors and successors."[38]  The court agrees and concludes that this information is relevant and discoverable.  Accordingly, this portion of PharMerica's motion is **GRANTED**. Within thirty (30) days of the date of this order, Clinton shall produce documents reflecting payments he received from all defendants in this matter.

### (14)  Request for Production Nos. 15, 17, and 18

In these requests, PharMerica seeks information regarding contracts or agreements between Clinton and any other Defendant.  Clinton objects on the grounds of relevance but also asserts that other than agreements Clinton entered on behalf of 24-7 and its subsidiaries, "there are no agreements or contracts between [Clinton] and 24-7 or the 24-7 owned entities."[39]  The court concludes that any contracts or agreements entered into between Clinton and the Infinia

---

[36] *Id.*, Exhibit B at 14.

[37] Docket no. 84 at 6.

[38] *Id.*

[39] Docket no. 80 at 15.

Defendants or Clinton and the 24-7 Defendants are relevant to PharMerica's claims against Clinton. Accordingly, this portion of PharMerica's motion is **GRANTED**. Within thirty (30) days of the date of this order, Clinton shall produce all contracts entered into by Clinton and the Infinia Defendants and Clinton and the 24-7 Defendants, whether acting for himself personally or on behalf of the Infinia Defendants or the 24-7 Defendants. If there are no documents responsive to this request, Clinton shall provide an affidavit to that effect and will be barred from relying on or using any document that was not produced.

### (15) Request for Production No. 16

In this request, PharMerica seeks all of Clinton's banks statements and bank reconciliations since January 1, 2006. Clinton objects on the grounds that his bank statements are confidential and are not relevant to this claims at issue in this case. The court does not agree. Clinton's bank statements are relevant to PharMerica's claims. Furthermore, Clinton's bank statements would be protected by the Protective Order entered in this case. Accordingly, this portion of PharMerica's motion is **GRANTED**. Within thirty (30) days of the date of this order, Clinton shall produce the documents sought in this request.

### C. PharMerica's Motion to Amend the Scheduling Order

PharMerica filed a motion to amend the scheduling order in this matter.[40] No opposition to this motion has been filed, and the time for doing so has passed. Accordingly, for the reasons set forth in PharMerica's motion, and for good cause appearing, said motion is **GRANTED**.

---

[40] *See* docket no. 72.

Upon entry of the instant order, the court will issue an Amended Scheduling Order to govern this case.

### D.  Motion to Quash a Subpoena and Motion for a Protective Order

Counsel for Clinton and the 24-7 Defendants, Miller Guymon ("Miller Guymon"), along with Clinton and the 24-7 Defendants (collectively, "Movants"), filed a motion to quash a subpoena, or, in the alternative, for a protective order.  PharMerica served a subpoena upon Miller Guymon seeking "[a]ll documents from January 1, 2005[,] to the present, regarding" a list of 21 entities, most of which are clients of Miller Guymon, including the Infinia Defendants and the 24-7 Defendants.[41]  The subpoena also requests "all documents from January 1, 2005[,] to the present, regarding" Scott, Clinton, Grant, or their affiliates.[42]  The documents sought by PharMerica include the following: "detailed bills for legal services rendered, including case name, number and client represented; hours billed for legal services rendered; payments; retainers; amounts paid into escrow accounts; any other payments made for Court sanctions, litigation expenses or settlement amounts; emails; correspondence; opinion letters; memoranda; drafts; and documents sent between parties."[43]

Movants object to the subpoena on the grounds that it (1) is overly broad and burdensome on its face, (2) seeks irrelevant information, (3) requests attorney-client or work-product privileged documents, and (4) subjects Miller Guymon to undue burden and expense.  In

---

[41] Docket no. 78, Exhibit 1.

[42] *Id.*

[43] *Id.*

its memorandum in opposition to the instant motion, PharMerica contends that the transfer of assets from the Infinia Defendants to the 24-7 Defendants "was nothing more than an elaborate scheme to defraud–and it appears it may have been orchestrated by Miller Guymon."[44] The basis for this assertion is that Blake Miller from Miller Guymon is referenced in the subject line in an email from Robert Condie ("Condie"), an accountant for Infinia and now 24-7. PharMerica summarizes Condie's email as follows:

> Condie highlights four debts he wants to pay before the foreclosure transaction—Clinton['s] . . . personal $100,000 credit card debt; . . . Grant's home equity loan; Condie's personal credit card debt; and debts owed to affiliated entities. And why does PharMerica think that Miller Guymon . . . may have counseled these acts? Because the email is titled "This morning's meeting with Blake" [and] "Blake" is presumably Blake Miller of Miller Guymon, Infinia's long time counsel.[45]

PharMerica further argues that any documents prepared by Miller Guymon to assist in the fraudulent asset transfer and any related communications would fall within the crime-fraud exception to the attorney-client privilege.

However, to eliminate the burden on Miller Guymon and the concern over the disclosure of privileged information, PharMerica offered to conduct discovery under the subpoena in phases. Specifically, PharMerica's modified request seeks only Miller Guymon's billing statements for non-personal injury and non-bankruptcy related matters rendered from June 1, 2007, through August 1, 2009, to the parties named in the subpoena. PharMerica asserts that it will then sort through the invoices to identify potentially relevant and non-privileged

---

[44] Docket no. 83 at 2.

[45] *Id.* at 2-3.

information.  At that point, PharMerica would request production of those documents, and PharMerica and Miller Guymon would resolve what materials are protected and what materials may be produced.

In their reply memorandum, Movants vehemently deny orchestrating or participating in a scheme to defraud the Infinia Defendants' creditors.  Movants contend that the one reference to Blake Miller does not support PharMerica's allegation that Miller Guymon orchestrated a fraudulent scheme.  Movants also argue that Miller Guymon's billing records are protected by the attorney-client privilege and that the crime-fraud exception to the attorney-client privilege does not apply to the billing records or other subpoenaed documents.

In its surreply, PharMerica asserts that Miller Guymon did assist in the fraudulent transfer of assets.  PharMerica provided a recently discovered email from Grant to the Internal Revenue Service ("IRS") that purportedly demonstrates Miller Guymon's involvement in the transaction at issue.  Specifically, the email outlines the plan to have Clinton's new company (24-7) take control of the Infinia Defendants' assets while shedding much of their unsecured debt.  The email states that "[s]ubject to final comments from Blake Miller, attached are the proposed purchase agreements in anticipation of our meeting on Wednesday."[46]  Therefore, PharMerica concludes, Miller Guymon must have been involved in the fraudulent transaction.

In their reply to PharMerica's surreply, Movants contend that the email does not establish that Miller Guymon actually made comments or suggested modifications to the documents. Movants assert that the email demonstrates only that Blake Miller was copied on an email to the

---

[46] Docket no. 90, Exhibit A.

IRS and that Grant suggested that Miller Guymon may have comments about the documents. Movants also argue that if Miller Guymon were really the mastermind behind the alleged fraudulent transaction, there should have been direct evidence of that somewhere in the 20,000 emails produced by Grant or the thousands of emails produced by the other parties.

The court concludes that the original subpoena is overly broad on its face and would invade the attorney-client and the work-product privileges. The court, however, concludes that PharMerica's modified request seeking Miller Guymon's billing statements for non-personal injury and non-bankruptcy related matters rendered from June 1, 2007, through August 1, 2009, to the parties named in the original subpoena is more reasonable. As such, the court will now determine whether the more narrowly tailored request would invade the attorney-client privilege.

The purpose behind the attorney-client privilege is to preserve *confidential communications* between attorney and client." *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1492 (10th Cir. 1990). "Typically, the attorney-client privilege does not extend to billing records. . . . However, although a simple invoice ordinarily is not privileged, billing records may be protected by the attorney-client privilege where they reveal the nature of services rendered." 81 Am. Jur. 2d § 396. The Tenth Circuit has also held that "[w]hile payment of a fee to an attorney is necessary to obtain legal advice, disclosure of the fee arrangement does not inhibit the normal communications necessary for the attorney to act effectively in representing the client." *In re Grand Jury Subpoenas*, 906 F.2d at 1492; *see also Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("Our decisions have recognized that the identity of the client, the amount of the fee, the identification of payment by case file name, and the general

purpose of the work performed are usually not protected from disclosure by the attorney-client privilege.").  Nevertheless, bills or statements that reveal the substance of any confidential communication between attorney and client would be protected.  *See In re Grand Jury Subpoenas*, 906 F.2d at 1492.

Based on the foregoing, the court **GRANTS IN PART AND DENIES IN PART** Movants' motions to quash and for a protective order.  Specifically, the court adopts PharMerica's modified approach to production under the subpoena.  Miller Guymon is ordered to produce its billing statements for non-personal injury and non-bankruptcy related matters rendered from June 1, 2007, through August 1, 2009, to the parties named in the subpoena.  That said, Miller Guymon may withhold or redact portions of any statement or document which reveal privileged communication or legal advice between Miller Guymon and its clients.  At this time, the court declines to determine whether the application of the crime-fraud exception is appropriate in this matter.

### E.  PharMerica's Motion for Leave to File a Surreply to Motion to Quash

Because the court considered PharMerica's surreply (as well as Movants' reply to PharMerica's surreply), PharMerica's motion for leave to file said surreply is **GRANTED**.

### CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED**:

(1)  PharMerica's motion to compel 24-7 to respond to its first set of discovery requests[47] is **GRANTED IN PART AND DENIED IN PART**, as set forth above;

---

[47] *See* docket no. 69.

(2)  PharMerica's motion to compel Clinton to respond to its first set of discovery requests[48] is **GRANTED IN PART AND DENIED IN PART**, as set forth above;

(3) PharMerica's motion to amend the scheduling order[49] is **GRANTED**;

(4) Clinton and the 24-7 Defendants' motion to quash a subpoena served upon counsel,[50] or, in the alternative, motion for a protective order[51] is **GRANTED IN PART AND DENIED IN PART**, as set forth above; and

(5)  PharMerica's motion for leave to file a surreply in opposition to the motion to quash[52] is **GRANTED**.

DATED this 30th day of July, 2010.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

[48] *See* docket no. 70.

[49] *See* docket no. 72.

[50] *See* docket no. 77.

[51] *See* docket no. 79.

[52] *See* docket no. 89.